### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF MISSOURI
### EASTERN DIVISION

| | | |
|---|---|---|
| **RICHARD A. LEONARD,** | ) | |
| | ) | |
| **Petitioner**, | ) | |
| **v.** | ) | **Case No. 4:17cv01452 PLC** |
| | ) | |
| **TROY STEELE,** | ) | |
| | ) | |
| **Respondent.** | ) | |

### MEMORANDUM AND ORDER

Petitioner Richard A. Leonard seeks federal habeas relief from a Missouri state court judgment entered after a bench trial.  See 28 U.S.C § 2254.  Respondent Troy Steele filed a response to the petition, along with exhibits consisting of copies of materials from the underlying state court proceedings.  In his traverse or reply, Petitioner requests an evidentiary hearing [ECF No. 10 at 10].  Respondent has not filed a response to Petitioner's request for an evidentiary hearing.

After careful consideration, the Court denies the petition because Petitioner presents only procedurally barred grounds for habeas relief and has not demonstrated either cause and prejudice or a miscarriage of justice to allow this Court to consider the merits of any of his grounds.[1]  The Court also denies Petitioner's request for an evidentiary hearing.

### I. Background

<u>Trial court proceedings</u>

By an information in lieu of indictment, the State of Missouri charged Petitioner with:  (1) acting with another to commit an assault in the first degree in violation of Missouri Revised

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the authority of the undersigned to conduct all proceedings and enter judgment in this civil matter.

Statutes § 565.050, by shooting Kevin Hahn ("Victim") on February 20, 2012, in St. Louis County

(Count 1); (2) armed criminal action in violation of Missouri Revised Statutes § 571.015 related

to the first-degree assault charged in Count 1 (Count 2); (3) robbery in the first degree in violation

of Missouri Revised Statutes § 569.020 by forcibly stealing U.S. Currency in Victim's possession

while displaying what appeared to be a deadly weapon on February 20, 2012, in St. Louis County

(Count 3); and (4) armed criminal action in violation of Missouri Revised Statutes § 571.015

related to the first-degree robbery charged in Count 3 (Count 4).[2]  Petitioner waived his right to a

jury trial.[3]

During the February 5, 2014, trial, the State introduced several exhibits, including

photographs of the crime scene, surveillance tapes from Clay's Market (the site where Petitioner

and Victim met and conversed for twenty to thirty minutes before going to the location of the

incident), pictures of Victim's automobile, the photo lineups used to identify Petitioner, and

Victim's cell phone, medical records, state identification card, and social security card, and

presented the testimony of three witnesses:  Victim; Michael Weaver, an officer with the City of

Wellston Police Department; and Rachelle Oliver, who at the time of this incident was an officer

with the City of Wellston Police Department.

Victim identified Petitioner as the person who shot him, and testified that he and another,

Jason Ratcliff, were together in Victim's car on February 20, 2012, trying to find a place where

Victim could cash his $480 paycheck.  They were finally able to cash the check at Clay's (or the

Wellston) Market at approximately 8:30 or 9:00 that evening.  While there, Victim and Petitioner

---

[2]  The State dismissed two other charges (Counts 5 and 6) that allegedly arose out of Petitioner's conduct on February 20, 2012, with respect to a different victim, Jason Ratcliff.  See prosecutor's "Nolle Prosequi as [to] Counts 5 & 6," dated February 5, 2014 and filed Mar. 6, 2014, Legal File, Resp't Ex. D at 52 [ECF No. 9-4]; Trial tr. at 4, Resp't Ex. J at 4 [ECF No. 9-10].

[3]  See Trial Court Order, dated Jan. 28, 2014, Legal file, Resp't Ex. D at 33 [ECF No. 9-4].

had a conversation for about twenty or thirty minutes during which Victim agreed to purchase some heroin.  When they left Clay's Market, Petitioner got in the rear passenger side of Victim's vehicle, while Victim sat in the front passenger seat and Mr. Ratcliff drove.  Petitioner provided the directions and got out of the vehicle at the destination, a parking lot near apartment buildings on Lenox Avenue in St. Louis County, Missouri.

After Petitioner got out of the car, Victim "discreetly" handed Mr. Ratcliff about $200 because Victim "was starting to feel uneasy, like it might have been a robbery."   Victim put the rest of the cash loose in his pocket to purchase the heroin.  Victim also had in his pockets at the time his cell phone, wallet, cigarettes, and a lighter.  His wallet did not contain cash but had his ID, a food stamp card, his social security card, and "random business cards."

Victim got out of the vehicle and another male who "was walking from the apartment buildings . . . met [Victim] and [Petitioner]" and each of the two men (Petitioner and the other individual) "pulled" what looked to Victim like "nine-millimeter semiautomatic" guns "on" Victim.  Petitioner said, "Give me your m----- f------ money" and Victim "gave [Petitioner all the cash] that was in [his] pockets."  In response, Petitioner said, "Give me all of your m----- f------ money."  Victim said, "That is all of it," "turned around and started to run," then the shooting occurred.

Victim was shot twice and testified "[t]here w[ere] definitely two people shooting at me . . . [b]ecause . . . [Victim] could hear two different guns going off."  Victim fell to the ground "[f]ace first" and could not move his legs, arms, or torso.  Victim testified he was "absolutely positive [that Petitioner] participated" in the shooting.[4]

---

[4]  Victim described the second man who held a gun as a "taller, bigger . . . black male" wearing "a hoody." While Victim was able to identify the second man in the hospital the day after the shooting, Victim acknowledged at trial that he would not be able to identify that man if Victim saw him again, and he "wish[ed]" he did know who the second shooter was.

3

Approximately twenty minutes after the shooting, Victim stated, Petitioner returned, flipped Victim over on his back, went through Victim's pockets, took Victim's cell phone and wallet, lifted Victim's shirt, and touched Victim's body with his hands.  Victim asked Petitioner "for a blanket" and Petitioner responded, "You should have gave [sic] me all your m----- f------ money."  As far as Victim knows, Petitioner then "took off" and Victim lost consciousness.

The next thing Victim remembered was "waking up in the hospital" paralyzed and in the intensive care unit ("ICU").  While he was in the hospital, Victim told the police what happened and recognized Petitioner "almost immediately" in a photo lineup the police showed him.

Victim testified he has not been able to walk since the shooting and, at the time of trial, still suffered from an infection he acquired during his stay in the ICU.  Victim further declared that he only has limited use of his hands, and needs help to use the bathroom, shower, get in and out of bed, and complete other daily living activities.

Around 11:00 p.m. on February 20, 2012, Officer Weaver was dispatched to University City, Missouri, after the discovery of a "shooting victim," who was Mr. Ratcliff, at a vehicle.  Officer Weaver took photographs of the vehicle, which had a shattered driver's side window and blood on the driver's side seat, and then went to the hospital to speak with Mr. Ratcliff.  After midnight, the owner of Clay's Market called with information about a prior shooting and reported that "the suspect may be located in th[e] store."  Officer Weaver, and two other Wellston police officers, including Officer Oliver, went to Clay's Market and found three males inside.

Officer Weaver noticed that one of the three males, the one Officer Weaver identified as Petitioner, had dried blood "all over his hands."  Petitioner would not tell Officer Weaver "where the blood c[a]me from" but said he had an ID in his front pants pocket.  When Officer Weaver searched Petitioner's front pants pocket for Petitioner's ID Officer Weaver found an ID that

4

belonged to Victim.   Officer Weaver handcuffed Petitioner and placed him in a patrol car, where Officer Weaver observed Petitioner "messing with" the locks on the car's doors.  Officer Weaver seized from Petitioner, Victim's cell phone in a cell phone case (the cell phone case was not Victim's), as well as "gold teeth" (or "two . . . gold grills") and a red and black hoody Petitioner was wearing, and Victim's state ID card and social security card, along with other loose papers found in Petitioner's pants pockets.

Officer Oliver identified Petitioner as the male he detained at Clay's Market as Petitioner tried to leave the store shortly after the three police officers entered.  As Officer Weaver turned Petitioner around to handcuff him behind his back, Officer Oliver noticed blood on Petitioner's hands.  After Petitioner stated he took the papers discovered on him out of a wallet he "just tossed . . . back down" at the Lenox Avenue location, Officer Oliver went to the Lenox Avenue location to look for the wallet.  When he was walking in back of an apartment building he heard someone saying, "Help me"; found Victim lying underneath some bushes; called an ambulance and accompanied Victim to the hospital; and then returned to the scene to look for any evidence, like the wallet or shell casings, but did not find anything.   During direct examination, Officer Oliver testified that he no longer worked for the City of Wellston Police Department and had a pending criminal charge for an "election offense" for which the prosecutor had not offered any deal or leniency in exchange for his testimony at Petitioner's criminal trial.

After the trial court denied Petitioner's oral motion at the close of the State's case for acquittal due to insufficient evidence, Petitioner took the stand.  Petitioner testified he met Victim and his companion the night of February 20, 2012, at Clay's Market, and they asked him for heroin. Petitioner contacted a man who said he had heroin and told Petitioner where to meet him. Petitioner did not see Victim cash his check.  Petitioner testified he did not have a gun with him

that night; that, at the apartment building, Petitioner observed Victim and the second man talking at the back of Victim's car; and Petitioner was surprised when he saw the second man "with the gun pointed at" Victim.  Petitioner stated he did not see "an exchange of any money" "but a gun was pulled [and s]hots were fired."  Petitioner ran when he heard the gun shots and later returned to look for items he thought he had "dropped . . . or left" there.

When he went back about fifteen minutes after the shooting, he picked up Victim's wallet, heard Victim "moaning," and "found [Victim] l[]ying face down" "in the grass."  Petitioner did "what [Victim] asked [him] to do . . . turn [Victim] over and help him."  Victim asked Petitioner for a blanket but Petitioner did not have one to give him.  Victim also stated "he had kids" and "told [Petitioner] to use [Victim's] phone" to "[c]all [Victim's] wife."  Petitioner "checked [Victim's] pockets for his phone, found the phone," found the name of a woman Victim gave him to call, and also tried to "call Jason" at Victim's request.  Petitioner's telephone calls were not answered.  Petitioner explained he did not call 911 because Victim "didn't ask [Petitioner] to call 911.  [Petitioner] did what [Victim] asked [Petitioner] to do."  Petitioner did not realize Victim was bleeding until he "touched" Victim.

Petitioner stated the second man returned to the area and asked Petitioner what he was doing.  Petitioner put Victim's phone in his pocket and left with Victim's phone and wallet, ending up back at Clay's Market.  Petitioner stated that the second man was in Clay's Market while Petitioner was there after the shooting.  Petitioner did not know he had blood on his hands until the police officers asked him about it after they detained him when he tried to leave Clay's Market after the three officers arrived.

With respect to the statement Victim testified Petitioner told him when Petitioner returned to the Lenox Avenue location, Petitioner disagreed with the statement and said he had remarked

instead, "you should have just gave [sic] him the money, you know."  Petitioner said he did not discuss with the second man or intend that Victim be robbed or hurt, and he had no idea the second man was going to rob and assault Victim.  The trial court denied Petitioner's oral motion to acquit at the end of all the evidence.

At the conclusion of the parties' closing arguments, the trial court announced from the bench its determination that, after considering all the evidence, witnesses' testimony, and exhibits, it found Petitioner guilty beyond a reasonable doubt of acting with another to commit first-degree assault, acting on his own to commit first-degree robbery, and acting on his own to knowingly commit armed criminal action with respect to the first-degree assault and first-degree robbery offenses.  Additionally, the trial court stated Victim's testimony was "more credible under the circumstances" than Petitioner's testimony, and the State's case was "much more credible and much more believable" than Petitioner's case.  The trial court made several specific findings, including characterizing Petitioner's stated "attempt to help" Victim after the shooting as "implausible and incredible under the circumstances."  At sentencing in March 2014, the trial court sentenced Petitioner to four concurrent terms of life imprisonment.

### Direct Appeal

In his direct appeal, Petitioner presented one point.  Petitioner challenged as an abuse of discretion and a violation of his Fourteenth Amendment right to due process the trial court's admission into evidence of State's exhibits 28, 29, and 31, photographs depicting Mr. Ratcliff's blood inside Victim's car.  Petitioner argued the photographs were irrelevant to the charges being tried and were unduly prejudicial because they related only to the charges involving Mr. Ratcliff which the State elected not to pursue.  The Missouri Court of Appeals for the Eastern District affirmed the trial court's judgment in an unpublished per curiam order accompanied by a

7

memorandum sent to the parties only setting forth the reasons for the order.  See State v. Leonard, No. 101358 (Mo. Ct. App. filed Apr. 7, 2015), Resp't Ex. C.   The Court of Appeals first found Petitioner had not preserved, and had waived, the error because his attorney responded "no objection" when the State sought to admit the challenged photographs during trial.  Id. Mem. at 3. Providing ex gratia review for plain error notwithstanding Petitioner's waiver, the Court of Appeals concluded "these exhibits were relevant to the charges concerning Victim because they depicted the vehicle that was involved in Victim's assault and robbery and they corroborated the testimony of the State's witnesses."  Id. at 4.   Specifically, the Court of Appeals concluded that these and other photographs of the vehicle admitted during trial "corroborated Victim's and Officer Weaver's testimony about the events that occurred the night Victim was robbed and shot."  Id.  To the extent Petitioner only challenged the photographs of the vehicle showing blood, the Court of Appeals stated "the depiction of blood in the[se] photographs does not make them irrelevant to the charges involving Victim."   Finally, "[e]ven assuming the [challenged] photographs were inadmissible, the Court of Appeals found "[i]n light of the other evidence the trial court relied upon to reach its decision, the admission of Exhibits 28, 29, and 31 was not outcome determinative and no manifest injustice resulted from their admission."  Id. at 5 (footnote omitted).   The Court of Appeals issued its mandate on May 5, 2015.  See May 5, 2015 entry on docket sheet for State v. Leonard, No. ED101358 (Mo. Ct. App. filed Mar. 17, 2014) (available at https://www.courts. mo.gov/casnet/cases/searchDockets.do (last visited September 3, 2020)).

Post-conviction motion proceedings

Petitioner filed a pro se motion for post-conviction relief ("PCR motion") pursuant to Missouri Supreme Court Rule 29.15.  In his PCR motion Petitioner set forth fourteen claims for relief, including that:  (1) he "volunteered for a gunpowder test and was denied it by Wellston

8

police"; (2) "a witness [who] testified against [him] was waiting to be tried and prosecuted by [the] same prosecutor's office for making false sworn statements, affidavits, statements of candidacy, etc. (Rachelle Oliver)"; and (3) he "made phone calls to the victim's family in [an] attempt to help [and that effort] was complet[e]ly overlooked."  Pet'r <u>pro</u> <u>se</u> PCR mot. para. 8, PCR Legal File, Resp't Ex. I at 8-11 [ECF No. 9-9].  Through appointed counsel, Petitioner filed an amended PCR motion and requested an evidentiary hearing.  Pet'r am. PCR mot., PCR Legal File, Resp't Ex. I at 21-34 [ECF No. 9-9].

In his amended PCR motion, Petitioner presented one ground for relief:  that Petitioner's trial attorney violated Petitioner's rights to due process of law, to the effective assistance of counsel, to present a defense, to remain silent or not be compelled to testify, and to a fair trial, in violation of his Fifth, Sixth, and Fourteenth Amendment rights, by failing to ask the trial court to consider "either the lesser-included class C felony of assault in the second degree and/or the lesser-included class A misdemeanor of assault in the third degree."  <u>Id.</u> at 23-24.  Although the PCR motion court initially set an evidentiary hearing, it ultimately denied Petitioner's amended PCR motion without conducting an evidentiary hearing.  <u>See</u> PCR mot. ct.'s Findings of Fact, Conclusions of Law, Order and J. ("Judgment"), PCR Legal File at 39-43, Resp't Ex. I [ECF No. 9-9].

Post-conviction appeal

For his only point on appeal, Petitioner argued the PCR motion court clearly erred and violated Petitioner's rights to due process and the effective assistance of counsel under the Fifth, Sixth, and Fourteenth Amendments by denying without an evidentiary hearing his claim that his trial attorney was ineffective for failing to ask the trial court to consider convicting Petitioner of "the lesser-included offenses of assault in the second degree and/or assault in the third degree."

9

Pet'r Br., Resp't Ex. E, at 20 [ECF No. 9-5].  Petitioner asserted that "but for trial counsel's ineffectiveness, there is a reasonable probability that the outcome of [Petitioner]'s trial would have been different."  Id.

The Missouri Court of Appeals for the Eastern District affirmed the PCR motion court's judgment in an unpublished per curiam order accompanied by a memorandum sent to the parties only setting forth the reasons for the order.  Leonard v. State, No. ED104059 (Mo. Ct. App. Feb. 14, 2017), Resp't Ex. G.  In its decision, the Court of Appeals found the circumstances of the incident as follows:

> The underlying case here arose out of a shooting that took place when [Victim] attempted to buy heroin from [Petitioner] and another man and both men robbed Victim.  Victim met [Petitioner] while he was cashing a $480 payroll check and made arrangements with [Petitioner] to buy heroin.  Victim's friend [Mr.] Ratcliff drove Victim and [Petitioner] to a location near an apartment building.  [Petitioner] and Victim exited the vehicle.  At that point, a man approached from the apartment building.  When the man reached Victim and [Petitioner], the man and [Petitioner] each pulled out a gun and pointed the guns at Victim demanding Victim's money.  Victim gave them all the cash he had on his person.  [Petitioner] and the man persisted in threatening Victim and again demanded all his money.  Victim pleaded with them that he had already given them all of it, and then he turned and ran.  The men repeatedly fired at him, hitting him twice and leaving Victim paralyzed.  At the time of the trial, Victim still could not walk, and did not expect to be able to ever again.  Victim also had not regained full use of his arms and hands.

> [Petitioner] was charged with various offenses, including first-degree assault for shooting Victim, and [Petitioner] requested a bench trial.  He testified in his own defense at the proceeding.  He testified that on the night of the shooting, he was not carrying a gun.  He testified that he was surprised when, after exiting Victim's vehicle at the apartment building, the man who came out to meet them pointed a gun at Victim.  [Petitioner] maintained that only that man, whom he identified as Lautha Anderson, fired shots at Victim.  [Petitioner] said that he ran away as soon as he started hearing gunshots.  [Petitioner] denied planning a robbery with Anderson and stated that he did not intend for Victim to be robbed or hurt.  Consistent with this testimony, trial counsel argued throughout the proceedings that [Petitioner] did not shoot Victim and was not guilty of first-degree assault or any charge based on allegations that he shot Victim.  In closing argument, counsel claimed that the worst [Petitioner] had done was to help arrange a drug deal.

Id. at 3-4.  The Court of Appeals concluded the record refuted Petitioner's contention "that it was unreasonable and prejudicial for [his trial] counsel to fail to make" a request of the trial court that it find Petitioner guilty of a lesser included offense of the first-degree assault charge.  Id. at 5.

Rather, the Court of Appeals found:

> The record shows that trial counsel purposely and strategically did not request that the trial court consider convicting [Petitioner] of lesser included offenses of first-degree assault; instead, throughout the trial, counsel argued – consistent with [Petitioner]'s own trial testimony – that [Petitioner] did not shoot or rob Victim or intend for such to occur.  This strategy was not counsel's bright idea, but [Petitioner]'s chosen gamble.  Indeed, counsel would have betrayed [Petitioner] if she had asked that the court consider convicting [Petitioner] of any crime based on allegations that he robbed or shot Victim, given that [Petitioner] himself denied culpability for any of the crimes committed against Victim.

> [Petitioner] has not explained how counsel's dutiful implementation of his favored strategy was unreasonable.  He argues that under the circumstances of the case, requesting that the trial court consider convicting him of a lesser included offense of first-degree assault could only have helped his position, and that no reasonable trial strategy justified counsel's failure to do so.  [Petitioner] forgets that because his position was that he was not guilty of any charge that he shot Victim, requesting that the trial court consider finding him guilty of such a charge, albeit a lesser one than first-degree assault, would have directly contradicted his own testimony and blown his defense.

Id.  The Court of Appeals also concluded the Missouri Supreme Court's holding in McNeal v. State, 500 S.W.3d 841, 845 (Mo. 2016) (en banc), that an attorney "[f]oregoing an instruction inconsistent with the defense's theory falls within the wide range of what may be considered objectively reasonable performance by counsel," "applies with equal force in the context of a bench trial to counsel[] having forgone requesting that the court consider convicting the defendant of a lesser included offense."  Leonard, No. ED104059, Resp't Ex. G at 6.  The Court of Appeals further noted that Petitioner urged it was reasonable for his trial attorney to have made the request, "not that it was unreasonable to fail to make such a request," and concluded "it is not ineffective

assistance of counsel to pursue one reasonable trial strategy to the exclusion of another reasonable trial strategy." Id.

With respect to the prejudice prong of an ineffective assistance of counsel claim, the Court of Appeals stated it did not need to address the prejudice prong because it had "rejected [Petitioner]'s claim that trial counsel's performance was deficient," but "to make clear" a state court decision Petitioner relied on "precludes a finding of prejudice in this case," the Court of Appeals briefly considered that case and Petitioner's prejudice argument. Id. In its consideration of Petitioner's prejudice argument, the Court of Appeals stated "there was ample evidence in the record to support the trial court's relevant conviction of" Petitioner. Id. at 7.

Finally, the Court of Appeals rejected Petitioner's contention that the motion court's scheduling of an evidentiary hearing "inevitably involves granting that the [PCR] motion has at least some merit." Id.

> [T]he fact that the motion court set a date for an evidentiary hearing in this case does not rebut the presumption that the trial court followed the law in the underlying [criminal] case. Nor, [the Court of Appeals noted], has [Petitioner] pointed to anything in the record that might rebut that presumption and demonstrate that he was prejudiced by counsel's failure to request that the [trial] court convict him of a lesser included offense.

Id. at 8. The Court of Appeals issued its mandate with respect to the post-conviction appeal on March 9, 2017. See Mandate, Resp't Ex. H [ECF No. 9-8].

Petitioner then filed his habeas petition and request for an evidentiary hearing.

## II.  Grounds for relief

Petitioner sets forth four grounds for relief. In his first ground, Petitioner alleges his trial attorney provided ineffective assistance of counsel by not bringing up to the trial court the fact that, "[w]hen [he] was arrested . . . [he] asked the police to do a gunpowder residue test on [his] hands and clothes to prove [he] didn't shoot [his] alleged victim" and the police did not perform

the test which, Petitioner asserts, is still used "to prove a suspect's guilt."  For his second ground based on "prosecutorial misconduct that resulted in prejudice against [him] at trial," Petitioner asserts the prosecutor called a police officer to the stand to testify against Petitioner "knowing this police officer was charged and awaiting trial for giving false statements, while under oath to the Courts."  In the third ground for relief, a claim that Petitioner's trial attorney provided ineffective assistance of counsel, Petitioner urges his trial attorney failed to pursue the fact that "when [Petitioner] discovered [his] alleged victim [he] made several phone calls to [Victim's] family so they could get help for [Victim but Petitioner] was afraid to call the police believing [his] life would be in danger."  Finally, in his fourth ground, Petitioner claims the prosecutor, his trial attorney, and his post-conviction counsel "all conspired together to get [and maintain] a conviction" because "[a]ll the proceedings pertaining [to his] case were designed to fail and secure [his] illegal conviction[, and a]ll [his] appeals were unprofessional and contained no facts."

Respondent counters that each of Petitioner's grounds for relief is procedurally barred from review on its merits because Petitioner did not raise any of his grounds on direct appeal or during the post-conviction proceedings.  Alternatively, Respondent asserts each of the grounds for relief lacks merit.

### III.  Discussion

(A)  <u>Procedural default</u>

(1)  Procedural default principles

"In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."  <u>Estelle v. McGuire</u>, 502 U.S. 62, 68 (1991); 28 U.S.C. § 2241(c)(3) and § 2254(a).  Before seeking federal habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas

petitioner "must first 'exhaust his state law remedies and fairly present the facts and substance of his habeas claim to the state court.'"[5]  Carney v. Fabian, 487 F.3d 1094, 1096 (8th Cir. 2007) (quoting Middleton v. Roper, 455 F.3d 838, 855 (8th Cir. 2006)); accord Nash v. Russell, 807 F.3d 892, 898 (8th Cir. 2015) (citing Baldwin v. Reese, 541 U.S. 27, 29 (2004)).  "'If a petitioner has not presented his habeas corpus claim to the state court, the claim is generally defaulted.'"  Carney, 487 F.3d at 1096 (quoting Barrett v. Acevedo, 169 F.3d 1155, 1161 (8th Cir. 1999) (en banc)).

A petitioner must present the claim to the state courts "in accordance with state procedural rules."  Arnold v. Dormire, 675 F.3d 1082, 1086-87 (8th Cir. 2012) (internal quotation marks omitted) (quoting Beaulieu v. Minnesota, 583 F.3d 570, 573 (8th Cir. 2009)); accord Sawyer v. Whitley, 505 U.S. 333, 338 (1992) (generally, a federal habeas court may not reach the merits of a federal constitutional claim procedurally defaulted due to a petitioner's failure "to follow applicable state rules in raising the claims" in state court).  To satisfy the exhaustion requirement, a state prisoner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  Grass v. Reitz, 643 F.3d 579, 584 (8th Cir. 2011) (internal quotation marks omitted) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999)).[6]

---

[5]  A claim is "fairly presented when a petitioner has properly raised the 'same factual grounds and legal theories' in the state courts [that] he is attempting to raise in his federal habeas petition."  Wemark v. Iowa, 322 F.3d 1018, 1021 (8th Cir. 2003) (quoting Joubert v. Hopkins, 75 F.3d 1232, 1240 (8th Cir. 1996)).  Respondent's procedural default arguments do not focus on the extent to which each of Petitioner's grounds for relief mirrors the statement of a claim Petitioner presented to the state courts, or the fair presentation requirement.  Instead, Respondent's arguments focus on whether Petitioner presented each of his grounds for relief to the appropriate state court.  Therefore, the Court does not discuss whether Petitioner "fairly presented" each of his grounds for relief.

[6]  Because Petitioner must present each claim through a complete round of a state's established appellate process, and the procedural default issue is whether Petitioner presented the claim to a state appellate court, the Court need not address the extent to which Petitioner presented a claim in the lower state courts.  Therefore, this discussion is limited to consideration of whether Petitioner presented each of his grounds for relief to the Missouri Court of Appeals in the course of his underlying criminal and post-conviction proceedings.

In Missouri state court proceedings, a litigant must raise constitutional claims at the earliest opportunity and preserve them throughout the proceedings.  Kirk v. State, 520 S.W.3d 443, 457 (Mo. 2017) (en banc) (quoting State v. Liberty, 370 S.W.3d 537, 546 (Mo. 2012) (en banc)).  Importantly, "[u]nder Missouri law, an appeal to the intermediate state appellate court sufficiently exhausts state remedies to permit federal habeas review under section 2254."  Taylor v. Roper, 561 F.3d 859, 861 n.2 (8th Cir. 2009).

A litigant in Missouri must pursue on direct appeal (rather than in a post-conviction proceeding) any allegation of prosecutorial misconduct that is apparent during trial court proceedings.  See, e.g., McIntosh v. State, 413 S.W.3d 320, 331 (Mo. 2013) (en banc) ("Generally freestanding claims of prosecutorial misconduct raised in a [PCR motion proceeding] are not cognizable if the alleged misconduct was apparent at trial"); Tisius v. State, 183 S.W.3d 207, 212 (Mo. 2006) (en banc) ("If the alleged [prosecutorial] misconduct was apparent at trial, then it is an issue for direct appeal, not a [post-conviction] proceeding"); Griffin v. State, 794 S.W.2d 659, 661 (Mo. 1990) (en banc) (a challenge to certain statements made by the prosecutor during closing argument is an "issue[] that w[as] before the trial court in the course of [the] criminal trial" and subject to review on direct appeal).  As the Missouri Supreme Court has stated, a post-conviction proceeding "is not a substitute for direct appeal, and matters that properly should have been raised on direct appeal may not be litigated in a post-conviction proceeding."  State v. Twenter, 818 S.W.2d 628, 636 (Mo. 1991) (en banc).

A post-conviction proceeding is, however, the exclusive procedure for pursuing an ineffective assistance of counsel claim in a Missouri state court; a court's decision on a post-conviction motion is subject to appeal; and a litigant may not file successive post-conviction motions.  Moore-El v. Luebbers, 446 F.3d 890, 896 (8th Cir. 2006); Mo. S. Ct. Rule 29.15.  To

exhaust an ineffective assistance of counsel claim for a federal habeas proceeding, the claim must be raised in the post-conviction appeal.  See, e.g., Osborne v. Purkett, 411 F.3d 911, 919 (8th Cir. 2005).  Any claim that should have been but was not presented in an appeal from a denial of a post-conviction motion is procedurally defaulted.  See, e.g., id. (an ineffective assistance of counsel claim that was in the post-conviction motion but not in the post-conviction appeal was "procedurally barred"); Sweet v. Delo, 125 F.3d 1144, 1150 (8th Cir. 1997) (finding an ineffective assistance of trial counsel claim defaulted "when [the petitioner] failed to raise it in his post-conviction appeal").

Finally, a petitioner must also present to the state courts a claim that participants in the petitioner's underlying criminal proceeding conspired to adversely affect the criminal proceeding. See, e.g., White v. Wyrick, 651 F.2d 597, 599 (8th Cir. 1981) (concluding a post-conviction motion proceeding was "adequate to protect [the petitioner]'s interests" with respect to the petitioner's claim "that the state trial judge participated in a conspiracy to deny [the petitioner] a fair trial"); Payne v. Rowley, 4:06CV581 JCH, 2007 WL 1231667, at *1 and *3 (E.D. Mo. Apr. 26, 2007) (the petitioner defaulted his claim that his plea was involuntary because "the prosecutor, the judge, and [the p]etitioner's counsel conspired to coerce [the p]etitioner into pleading guilty" when the petitioner "never raised [the claim] in any state court proceeding"); Noble v. Swenson, 285 F. Supp. 385, 386, 387 (W.D. Mo. 1968) (rejecting the petitioner's claim he was "unconstitutionally denied his right of appeal by a conspiracy between his court-appointed attorney, the Prosecuting Attorney, and the officials of the Missouri State Prison" after the Missouri state courts considered the claim in post-conviction proceedings).

(2)  Procedural default of Petitioner's grounds

In ground two Petitioner pursues a claim of alleged prosecutorial misconduct occurring during trial proceedings in Petitioner's criminal case.   Specifically, Petitioner contends the prosecutor engaged in misconduct by presenting as a witness during trial a police officer who had pending against him in a separate case a charge that he gave a false statement.   During trial the witness's pending charge was the subject of direct and cross-examination.   Because this alleged prosecutorial misconduct arose out of the prosecutor's presentation of a witness whose pending charge was disclosed during trial, the alleged misconduct was apparent during the trial court proceedings and, therefore, Petitioner needed to pursue the claim in his direct appeal.   See, e.g., McIntosh, 413 S.W.3d at 331; Tisius, 183 S.W.3d at 212; Griffin, 794 S.W.2d at 661.   Petitioner did not present in his direct appeal to the Missouri Court of Appeals any challenge to the prosecutor's presentation of witnesses during trial.   Instead, Petitioner only challenged in his direct appeal the State's introduction of three exhibits.   Therefore, the prosecutorial misconduct claim in ground two is procedurally defaulted.

Additionally, Petitioner did not present in his post-conviction appeal the ineffective assistance of trial counsel claims that he pursues in grounds one and three.   In ground one, Petitioner contends his trial counsel was ineffective in not advising the trial court that the police refused or declined his request that they conduct a gunshot residue test on Petitioner's hands and clothing at the time of his arrest.   In ground three, Petitioner asserts his trial attorney provided ineffective assistance of counsel by failing to introduce evidence that, after Petitioner assaulted Victim, Petitioner called Victim's family and was afraid to call the police.   The only point Petitioner pursued in his post-conviction appeal was a claim that his trial attorney provided ineffective assistance by failing to ask the trial court to consider lesser-included offenses of the first-degree assault charge.   Because Petitioner did not pursue in his post-conviction appeal his

claims regarding the ineffective assistance of his trial attorney that he presents as grounds one and three in his habeas petition, the claims in grounds one and three are procedurally defaulted.

With respect to his remaining ground for habeas relief, ground four, in which Petitioner alleges the prosecutor, his trial attorney, and his post-conviction counsel conspired to "get [and maintain] a conviction," Petitioner has not presented this conspiracy claim to any state court during his underlying criminal and post-conviction proceedings.  Therefore, the claim in ground four is also procedurally defaulted.

Having found all of Petitioner's grounds for habeas relief procedurally defaulted, the Court considers whether it may nevertheless consider the merits of those grounds based on a showing by Petitioner of either cause and prejudice or a miscarriage of justice.

(B) Cause and prejudice or a miscarriage of justice exceptions to procedural default

Respondent contends Petitioner has not demonstrated either cause and prejudice or a miscarriage of justice to allow the Court to consider the merits of any of Petitioner's four procedurally defaulted grounds for relief.  Petitioner counters that he was denied the opportunity to obtain an adjudication by the state courts of the merits of these claims because, despite Petitioner's requests, his "post-conviction" attorneys failed to present these claims "in the direct [appeal] and post-conviction proceedings."   Additionally, Petitioner cites Martinez v. Ryan, 566 U.S. 1, 14 (2012), to support his position that the ineffective assistance of his attorney at the post-conviction motion stage of the proceedings establishes cause for his procedural default of his ineffective assistance of trial counsel claims.

A federal habeas court may not consider the merits of a procedurally defaulted claim "unless the petitioner can show cause and prejudice or that he is actually innocent of the charges." Stephen v. Smith, 963 F.3d 795, 799 (8th Cir. 2020) (internal quotation marks and citation

18

omitted).   More specifically, "[t]o overcome the procedural default, [a petitioner] must show [either] cause for not presenting the [procedurally defaulted claim] . . . , and prejudice from the failure, or a fundamental miscarriage of justice – meaning that [the petitioner] is actually innocent." Storey v. Roper, 603 F.3d 507, 523-24 (8th Cir. 2010) (citing Schlup v. Delo, 513 U.S. 298, 324-27 (1995) and Coleman v. Thompson, 501 U.S. 722, 748, 750 (1991)).

(1) Cause and prejudice

"Cause for a procedural default exists where 'something *external* to the petitioner, something that cannot fairly be attributed to him[,] . . . 'impeded [his] efforts to comply with the State's procedural rule.'" Maples v. Thomas, 565 U.S. 266, 281 (2012) (alterations and emphasis in original) (quoting Coleman, 501 U.S. at 753).   Notably, "the precise contours of the cause requirement have not been clearly defined." Ivy v. Caspari, 173 F.3d 1136, 1140 (8th Cir. 1999). If a petitioner does not establish cause for the procedural default, a habeas court need not determine whether the petitioner demonstrated prejudice. Oglesby v. Bowersox, 592 F.3d 922, 926 (8th Cir. 2010).

The only external impediment Petitioner presents as cause for his procedural defaults is his direct appeal attorney with respect to any claim he did not pursue in his direct appeal and his post-conviction motion counsel with respect to his other claims.   For cause established by a direct appeal attorney's failure to pursue issues on appeal, the attorney's conduct must constitute the ineffective assistance of appellate counsel and, if the ineffective assistance of appellate counsel claim itself is procedurally defaulted, the petitioner must satisfy the cause and prejudice standard as to the ineffective assistance of appellate counsel claim[7] before that attorney's ineffective assistance may

---

[7]  A petitioner cannot establish cause for a failure to present the state courts with a claim that the petitioner's direct appeal attorney provided ineffective assistance of counsel by urging his post-conviction motion counsel provided ineffective assistance of counsel in failing to pursue the procedurally defaulted ineffective assistance of direct appeal counsel claim. Davila v. Davis, 137 S. Ct. 2058 (2017).

serve as cause for another procedurally defaulted claim.  See, e.g., Edwards v. Carpenter, 529 U.S. 446, 450-53 (2000).  Petitioner did not pursue before the state courts any claim that his attorney on direct appeal provided ineffective assistance of counsel.  Therefore, any ineffective assistance of Petitioner's direct appeal attorney may not constitute cause for Petitioner's failure to present on direct appeal the alleged prosecutorial misconduct claim or any other claim Petitioner should have pursued on direct appeal.

Petitioner correctly asserts that any ineffective assistance of his post-conviction attorney resulting in the omission of his ineffective assistance of trial counsel claims from his amended post-conviction motion establishes cause under Martinez, supra.  Any alleged ineffective assistance of an attorney representing a petitioner in a post-conviction appeal, however, is not sufficient to establish cause.  Martinez, 566 U.S. at 16 ("the holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings" (emphasis added)); Franklin v. Hawley, 879 F.3d 307, 311-14 (8th Cir. 2018); Arnold, 675 F.3d at 1087.  Therefore, Petitioner cannot establish cause through his post-conviction appeal attorney for Petitioner's failure to present his ineffective assistance of trial counsel claims in his post-conviction appeal.  Under the circumstances, any ineffective assistance of counsel provided by Petitioner's attorneys during either his direct appeal or his post-conviction appeal is insufficient to establish the cause necessary to support an exception to the procedural default of Petitioner's grounds for relief.  Because Petitioner has not established the requisite cause, the Court need not consider whether Petitioner has demonstrated the prejudice required to overcome the procedural default of those grounds.  Oglesby, 592 F.3d at 926.

(2)  Miscarriage of justice

"[A] credible showing of [the prisoner's] actual innocence [of the crimes of which the prisoner was convicted] may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief." McQuiggin v. Perkins, 586 U.S. 383, 392 (2013); House v. Bell, 547 U.S. 518, 537 (2006).  "To invoke the miscarriage of justice exception . . . a petitioner 'must show that it is more likely than not that no reasonable [factfinder] would have convicted him in the light of the new evidence.'" McQuiggin, 586 U.S. at 392 (quoting Schlup, 513 U.S. at 327).  "New" evidence is evidence "that was not available at trial." Storey, 603 F.3d at 523–24 (internal quotation marks and citation omitted).  "'Without any new evidence of innocence, even the existence of a concededly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of a [procedurally] barred claim.'" Cagle v. Norris, 474 F.3d 1090, 1099 (8th Cir. 2007) (quoting Schlup, 513 U.S. at 316).  Petitioner has not submitted any new evidence of his actual innocence or alleged such evidence exists.

Under the circumstances, Petitioner has not established either cause and prejudice or a miscarriage of justice to allow this Court's consideration of the merits of Petitioner's procedurally defaulted grounds for relief.  Accordingly, the Court denies as procedurally barred, and without addressing their merits, the claims Petitioner sets forth in grounds one through four of his habeas petition.

## IV.  Evidentiary hearing

In his traverse or reply, Petitioner requests an evidentiary hearing [ECF No. 10 at 10]. Respondent did not address this request.

Generally, an evidentiary hearing is within a habeas court's discretion, as limited by statutory restrictions set forth in the AEDPA.  See Schriro v. Landrigan, 550 U.S. 465, 473-75

(2007); 28 U.S.C. § 2254(e)(2).[8]  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  Schriro, 550 U.S. at 474.  In addition, a federal habeas court must take into account "the deferential standards" under the AEDPA that "control whether to grant habeas relief."  Id.  A habeas court need not hold an evidentiary hearing "if the record refutes the . . . factual allegations, [if the record] otherwise precludes habeas relief," or "on issues that can be resolved by reference to the state court record." Id. (internal quotation marks and citation omitted).

Petitioner has not demonstrated a basis for granting an evidentiary hearing under the provisions of Section 2254(e)(2).  Additionally, the Court concludes after review of the state court record and Petitioner's grounds for habeas relief that the record precludes habeas relief and allows resolution of the issues by reference to the state court record.   Therefore, the Court denies Petitioner's evidentiary hearing request.

## V.  Certificate of appealability

A certificate of appealability ("COA") is required to appeal a final order in a habeas proceeding under 28 U.S.C. § 2254.  28 U.S.C. § 2253(c); Fed. R. App. 22(b)(1).  When a federal habeas court resolves a ground for relief on procedural grounds,

> without reaching the [merits of the petitioner's] underlying constitutional claim, a COA should issue when the [petitioner] shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.

---

[8]  Section 2254(e)(2) states in relevant part that a federal habeas court "shall not hold an evidentiary hearing on" a petitioner's claim if the petitioner "has failed to develop the factual basis of a claim in State court proceedings," unless the petitioner shows: (1) either a new, "previously unavailable" rule of constitutional law made retroactive to collateral review cases by the Supreme Court, 28 U.S.C. § 2254(e)(2)(A)(i),  or "a factual predicate that could not have been previously discovered through the exercise of due diligence," 28 U.S.C. § 2254(e)(2)(A)(ii); and (2) there are sufficient facts underlying the claim "to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the [petitioner] guilty of the underlying offense," 28   U.S.C. § 2254(e)(2)(B).

Slack v. McDaniel, 529 U.S. 473, 484 (2000).  Importantly, a court may "resolve the issue whose answer is more apparent from the record and arguments."  Id. at 485.

The Court concludes Petitioner cannot make a showing that satisfies the requirements set forth in Slack with respect to any of Petitioner's procedurally barred grounds for habeas relief. Additionally, the Court finds it is clear Petitioner's grounds for relief are procedurally barred, justifying denial of a COA.  See Langley v. Norris, 465 F.3d 861, 862-63 (8th Cir. 2006). Accordingly, the Court will not issue a certificate of appealability.

## VI.  Conclusion

After careful consideration,

**IT IS HEREBY ORDERED** that Petitioner's Petition for Writ of Habeas Corpus is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's request for an evidentiary hearing [ECF No. 10 at 10] is **DENIED**.

**IT IS FINALLY ORDERED** that the Court will not issue a certificate of appealability.

A separate judgment in accordance with this Memorandum and Order is entered this same date.

_____
PATRICIA L. COHEN
UNITED STATES MAGISTRATE JUDGE

Dated this 4th day of September, 2020